UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KIMBERBELL KIDS, L.L.C., | ) |
| Plaintiff, | ) |
| v. | ) 3:24-CV-00261-DCLC-JEM |
| RNK, LLC, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to construe U.S. Patent No. D874,953 ("953 Patent") and U.S. Patent No. D891,950 ("950 Patent"). Plaintiff Kimberbell Kids, L.L.C. sued Defendant RNK, LLC, and its President and CEO, Cliff Wallach, alleging that they infringed the patents. Kimberbell now asks the Court to adopt its construction of the patents. Defendants oppose Plaintiff's construction and offer their own. The Court conducted a *Markman* hearing on April 3, 2025. Having been fully briefed and argued, the matter is ripe for resolution.

I.  **BACKGROUND**

Plaintiff Kimberbell Kids, L.L.C. is a Utah-based designer and retailer of embroidery and quilting products. [Doc. 1, ¶¶ 8–10]. Defendant RNK, LLC is their direct competitor. [*Id.* ¶¶ 16–18]. Defendant Cliff Wallach is the President and CEO of RNK. [*Id.* ¶ 3].

1

The dispute here centers on two design patents for quilting rulers. Kimberbell's founder—Kim Christopherson—invented a quilting ruler ("Orange Pop Ruler"), which has two iterations. Both iterations are protected by design patents: the first is protected by the 953 Patent and the second is protected by the 950 Patent. The 953 Patent is a singular square ruler with perpendicular notches at the corners, while the 950 Patent includes a second, smaller square ruler with perpendicular notches at the corners nested inside a larger ruler. Both patents claim "[t]he ornamental design for a quilt ruler . . . ." The design patents are illustrated below, with the 953 Patent on the left and the 950 Patent on the right:



Figure 2, US D874,953 (front view)    Figure 3, US D891,950 (front view)

Kimberbell alleges that RNK infringed these patents. [*Id.* ¶¶ 16–24]. Kimberbell asserts that Wallach and RNK "directed the design and distribution of [and] offer and sell quilt rulers, including under the 'Quilter's Select,' 'RNK Distributing,' and/or 'Square-It' names and marks, in 8.5" and 7.5" versions." [*Id.* ¶ 18]. Kimberbell argues that the designs of the RNK quilt rulers "are substantially the same as the designs of the Kimberbell Patents" and "are nearly identical in dimension and have thin, planar, and square/rectangular frames with square/rectangular apertures on the insides having two perpendicular and terminally rounded cutouts at each corner." [*Id.* ¶ 21].

2

RNK's allegedly infringing products are illustrated below:

 

QS/RNK 8.5"                    QS/RNK 7.5"

Kimberbell maintains that the designs of the RNK products are so similar to the Kimberbell patented designs "that customers are likely to be deceived and persuaded to buy the [RNK products] thinking they are actually buying products protected by the Kimberbell Patents." [*Id.* ¶ 22]. On April 19, 2024, Kimberbell notified RNK that the RNK products infringed the Kimberbell Patents and requested that they stop selling the infringing products. [*Id.* ¶ 23]. RNK refused. [*Id.* ¶ 24].

Kimberbell filed this action on June 11, 2024. [Doc. 1]. Their Complaint contained two counts: the first for infringement of the 953 Patent, the second for infringement of the 950 Patent. [*Id.* ¶¶ 25–40]. On both counts Kimberbell seeks: damages resulting from the infringement, an injunction preventing continued infringement, increased damages for willful infringement under 35 U.S.C. § 284, and attorney's fees and costs. [*Id.* ¶¶ 28–31, 36–39]. In the alternative, Kimberbell maintains that they are entitled to recover RNK's total profits from the sale of the allegedly infringing products. [*Id.* ¶¶ 32, 40].

3

On October 24, 2024, the Court set a briefing schedule for claim construction and a potential *Markman* hearing. [Doc. 29]. The parties filed their initial infringement, invalidity, and claim construction contentions [Docs. 30, 31] and fully briefed the matter. [Docs. 32, 35, 36]. RNK requested an in-person *Markman* hearing; the Court conducted it on April 3, 2025.

## II. LEGAL STANDARD

Inventors can claim two types of patents: utility patents, which protect "new and useful" inventions, 35 U.S.C. § 101, and design patents, which cover "new, original, and ornamental design[s] for an article of manufacture." 35 U.S.C. § 171. While utility patents apply to "new and useful" inventions, design patents "contemplate not so much utility as appearance." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 524 (1871).

"Accordingly, the scope of a design patent varies from that of a utility patent: it is the form of the object that is claimed, not the object itself." *Reddy v. Lowe's Companies, Inc.*, 60 F. Supp. 3d 249, 251 (D. Mass. 2014). "The design for an article consists of the visual characteristics or aspect displayed by the article. It is the appearance presented by the article which creates an impression through the eye upon the mind of the observer." *Id.* (internal citation and quotations omitted).

"[I]nfringement of a design patent is evaluated in a two-step process." *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314 (Fed. Cir. 2007) *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). "First, the court must construe the claims of the design patent to determine their meaning and scope." *Id.*[1] The second

---

[1] In 1996, the Supreme Court held that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

step requires the factfinder to compare the claim and the accused device, employing the "ordinary observer" test. *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002).[2]

*Egyptian Goddess* provided district courts with guidance on how to conduct claim construction in design patent cases. There, the Federal Circuit explained that design patents "'typically are claimed as shown in drawings,' and that claim construction is 'adapted accordingly.'" *Egyptian Goddess*, 543 F.3d at 679. The Court cautioned that "[g]iven the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Id.* Thus, district courts generally "construe" design patent claims by referring to drawings, not by issuing detailed descriptions.

A design patent "limits protection to the ornamental design of the article." *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010). When a functional article "also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional element of the claimed article." *Id.* at 1294. So "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

## III. PARTIES' CLAIM CONSTRUCTION CONTENTIONS

As for the 953 Patent, Kimberbell maintains that there are only two functional elements: (1) the concept of inside straight edges; and (2) the concepts of cutouts at inside corners. [Doc. 30,

---

[2] *Catalina Lighting* provides that the second step requires the factfinder to employ "both the 'ordinary observer' test and the 'point of novelty' test." *Id.* The Federal Circuit did away with the "point of novelty" test in *Egyptian Goddess*, and now employs only the "ordinary observer" test. 543 F.3d at 672. The change is immaterial for the *Markman* hearing: infringement of a design patent remains a two-step process. The only difference is that the test employed at the second step has changed.

5

pg. 2]. Kimberbell asks the Court to construe the 953 Patent to include these features as ornamental: (1) overall square and/or rectangular continuous frame shape (blue) with specific side width (red), depth (green), planar top (orange) and planar bottom (not shown, opposite orange); and (2) the shape, length, width, depth, position, and number of bifurcated perpendicular slot pairs within the frame. Kimberbell's contentions with respect to the ornamental features of the 953 Patent are illustrated below; the first category is on the left, the second category is on the right.



Defendants respond to Kimberbell's 953 Patent Contentions that both categories of features Kimberbell contends are ornamental are functional. [Doc. 31, pg. 1]. RNK also argues that both patents are invalid for several reasons. Those arguments are not presently before the Court. [*Id.* 1–2].

For the 950 Patent, Kimberbell concedes that these elements are functional: (1) the concept of inside straight edges; (2) the concept of cutouts at the corners; and (3) nesting elements. [*Id.* at 3]. Kimberbell asks the Court to construe the 950 Patent to include these features as ornamental: (1) overall square and/or rectangular continuous frame shapes (blue) with specific side widths (red), depths (green), planar tops (orange), and planar bottoms (not shown; opposite orange); and

6

Case 3:24-cv-00261-DCLC-JEM   Document 45   Filed 08/28/25   Page 6 of 11
PageID #: 361

(2) the shape, length, width, depth, position, and number of bifurcated perpendicular slot pairs within the frames. [*Id.* at 4; Doc. 32, pg. 5]. The contentions are illustrated below; the first category is on the left, and the second category is on the right.



RNK rehashes many of its same arguments for the 950 Patent contentions. RNK maintains that the Kimberbell's first category of contentions are functional, not ornamental. [Doc. 31, pg. 3].³ RNK also raises its same invalidity arguments. [*Id.* at 1–2].

## IV. CONSTRUCTION

"In construing a design patent claim, the scope of the claimed design encompasses 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'" *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104–105 (Fed. Cir. 1996)) *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665. Kimberbell owns both the 953 and 950 Patents, which both claim "[t]he ornamental design for a quilt ruler," which the Patents illustrate. Following the guidance of the

---

³ RNK does not make the same argument for the second category of contentions on the 950 Patent.

Federal Circuit, the Court will not attempt a detailed description of the claimed designs. The Court instead relies on the exemplary drawings illustrated in the Patents.

Still, the Court must consider the functional characteristics of the design. *See OddzOn*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). Those functional elements "do not invalidate the design patent," but they "limit the scope of the protected subject matter." *Id.* at 1406. In determining whether design features are functional, the Court may consider: (1) whether the protected design represents the best design; (2) whether alternative designs would adversely affect the utility of the specified article; (3) whether there are any concomitant utility patents; (4) whether the advertising touts particular features of the design as having a specific utility; and (5) whether there are any elements in the design or an overall appearance clearly not dictated by function.[4] *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1322 (Fed. Cir. 2016). The Court will address each Patent in turn.

### A. THE 953 PATENT

First, the Court construes square or rectangular frame shape as functional. All parties agree that the 953 Patent protects a quilt ruler. The ruler enables the cutting of square or rectangular quilt blocks. Were the frame shape not square or rectangular, it would defeat the purpose of the device. The square or rectangular overall shape is dictated by the function of the device.

Second, the Court construes the planar top and bottom of the device as functional. The purpose of the device is to cut squares of fabric. And because the device is a square with both a planar top and bottom, it can be used with either the top or bottom faces on the fabric. But to use

---

[4] The Court notes here that these factors were originally intended to help courts determine whether a claimed design was invalid, the Federal Circuit has noted that they "may serve as a useful guide for claim construction functionality as well." *Sport Dimension*, 820 F.3d at 1322.

8

Case 3:24-cv-00261-DCLC-JEM    Document 45    Filed 08/28/25    Page 8 of 11
PageID #: 363

the device in either position, it must lie flat on a piece of fabric. If the ruler were not flat on the top and bottom—if it had some sort of raised ornamental design—it would not lie flat on the fabric, and it would be difficult or impossible to use the interior of the ruler to cut perfect squares. The function of the article demands the planar top and bottom, so they are functional aspects of the design.

Third, the Court construes the bifurcated slot pairs at the ends of the interior sides of the ruler as functional, but their particular dimensions and appearance as ornamental. The ruler must have the slot pairs at the end of each side to allow the cutting blade to pass slightly beyond the end of a quilt block. The ruler needs two slots at the end of each side, they have to be in line with the edge of the ruler, and they must be the same depth as the ruler itself to allow the cutting blade to pass through. The Court can ascertain no reason, though, why the slot pairs *must* have the exact dimensions or shapes employed in the 953 Patent. The same function could be achieved with any number of decorative designs or alternative widths or depths. The Court finds that the shape, length, and width of the slots is ornamental, but the depth, position, and number of slot pairs are functional.

### B. THE 950 PATENT

So far as the Court can tell, the only aspect differentiating the 950 Patent from the 953 Patent is the nesting element. The design consists of two identical quilt rulers with one nested inside the other. Kimberbell concedes that the nesting element is functional, not ornamental. The Court agrees. The nesting element allows the user to cut smaller quilt blocks; if the device did not nest, it would defeat the purpose of the 953 Patent. The Court construes the nesting element as functional.

The Court construes the other features as it did with respect to the 950 Patent. Save for the nesting element, the features and design of the 950 Patent are the same. The Court sees no reason why some features would be functional in one patent but ornamental in the other.

## V. CONCLUSION

For the reasons foregoing, the Court adopts the claim constructions listed below for the 953 and 950 Patents.

| The 953 Patent | | |
|---|---|---|
| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Claim Construction |
| The ornamental design for a quilt ruler as shown in [the drawings] and described in the patent. Functional elements of the quilt ruler design include: (1) the concept of inside straight edges; and (2) the concept of cutouts at inside corners. Ornamental (non-functional) elements of the quilt ruler design include: overall square and/or rectangular continuous frame shape with specific side width, depth, planar top, and planar bottom; and (2) shape, length, width, depth, position, and number of bifurcated perpendicular slot pairs within the frame. | These elements are not ornamental: (1) overall square and/or rectangular continuous frame shape with specific side width, depth, planar top, and planar bottom; (2) shape, length, width, depth, position, and number of bifurcated slot pairs within the frame. | The overall visual impression of the ornamental design for a quilt ruler, as shown and described in Figures 1–14 of United States Design Patent D874,953. The functional aspects of the quilt ruler include: (1) the straight inside edges; (2) the concept of cutouts at inside corners; (3) the overall square or rectangular frame shape; (4) the planar top and bottom; and (5) the depth, position, and number of bifurcated perpendicular slot pairs within the frame. The enumerated functional aspects are not part of the claimed design. |

| The 950 Patent | | |
|---|---|---|
| Plaintiff's Proposed Construction | Defendants' Proposed Construction | Court's Claim Construction |
| The ornamental design for a quilt ruler as shown in [the drawings] and described in the patent. Functional elements of the quilt ruler design include: (1) the concept of inside straight edges; (2) the concept of cutouts at inside corners; and (3) nesting elements. Ornamental (non-functional) elements of the quilt ruler design include: overall square and/or rectangular continuous frame shapes with specific side width, depth, planar top, and planar bottom; and (2) shape, length, width, depth, position, and number of bifurcated perpendicular slot pairs within the frame. | The following elements are not ornamental: (1) overall square and/or rectangular continuous frame shape with specific side width, depth, planar top, and planar bottom; (2) shape, length, width, depth, position, and number of bifurcated slot pairs within the frame. | The overall visual impression of the ornamental design for a quilt ruler, as shown and described in Figures 1–14 of United States Design Patent D891,950. The functional aspects of the quilt ruler include: (1) the straight inside edges; (2) the concept of cutouts at inside corners; (3) the nesting elements; (4) the overall square or rectangular frame shape; (5) the planar top and bottom; and (6) the depth, position, and number of bifurcated perpendicular slot pairs within the frame. The enumerated functional aspects are not part of the claimed design. |

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge